301 So.2d 154 (1974)
David DAVIS, As Administrator of the Estate of Herbert J. Davis, Deceased, Appellant,
v.
Juanita DAVIS, Appellee.
No. 74-218.
District Court of Appeal of Florida, Third District.
October 15, 1974.
*155 Trager & Schwartz, Miami Beach, and Jeffrey M. Fenster, Miami, for appellant.
Zinn & Reinhard, Miami, for appellee.
Before PEARSON and HENDRY, JJ., and RAWLS, JOHN S., Associate Judge.
HENDRY, Judge.
The pivotal question presented for review by this appeal is as follows: do the terms of a property settlement agreement incorporated into a final decree of dissolution of marriage serve to relinquish an expectancy interest of the former wife in the proceeds of a life insurance policy and a profit sharing trust in which the former husband named his ex-wife as the beneficiary?
By entry of a summary final judgment, the trial court answered in the negative. For the reasons to follow, we are in agreement and affirm the judgment.
The appellant, David Davis, is the decedent Herbert J. Davis' son. The appellee, Juanita Davis, is the decedent's ex-wife. A final decree of dissolution of marriage was entered on May 18, 1973. The decree specifically approved and incorporated a property settlement agreement entered into between the parties on April 24, 1973.
On September 9, 1973, Herbert J. Davis died intestate, and the appellant was appointed as administrator of his father's estate. Nine days after his father's death, appellant instituted this action in a complaint for declaratory relief and a temporary injunction. Named as defendants were the appellee, the trustees of a profit sharing trust created by the decedent's employer, the Rose Auto Stores of Florida, Inc. [hereinafter trust], and the Connecticut General Life Insurance Company [hereinafter Connecticut General].
It was determined that the decedent had made contributions to the trust totaling $8,402.60, and his life was insured for $7,000.00 under a group policy issued by Connecticut General through the decedent's employer. Both under the trust and the insurance policy, the appellee was the named beneficiary.
In his complaint, the appellant alleged that by virtue of the property settlement agreement incorporated into the final decree *156 of dissolution of marriage, the appellee had released and relinquished her legal right to receive the proceeds from either the trust or the insurance policy.
In addition, the complaint prayed for entry by the court of a temporary injunction restraining the trustees of the trust or Connecticut General from making any payment to the appellee until the cause was finally adjudicated. The court granted the temporary injunction requested.
Together with her answer, the appellee filed crossclaims against the trust and Connecticut General seeking payment as the designated beneficiary.
Both the trust and Connecticut General filed motions together with a counterclaim and crossclaim seeking entry of a final order of interpleader, offering to deposit the sum total of $15,402.60 into the Registry of the Court, stating that each was in the position of an innocent stakeholder, and requesting an order dismissing them from the cause without further liability and awarding reasonable attorneys' fees.
The court granted the two motions and by separate orders dismissed the trust and Connecticut General, retaining jurisdiction solely to determine at a later juncture the reasonable attorney's fee due to each.
Subsequently, the cause came on for hearing on motions for summary judgment filed by both the appellant and appellee. Based on the pleadings, depositions, affidavits and other documents of record, the court granted the appellee's motion and denied the appellant's, and entered final judgment in favor of the appellee for $15,402.60, plus $450.00 as attorney's fees and costs.
By a separate order entered the same day, the court stated that pursuant to a stipulation previously entered into between the parties, attorney's fees of $400.00 were awarded to the trust and Connecticut General, plus $50.00 to the former as costs and $37.50 to the latter, and the clerk was directed to disburse from the funds interpleaded into the Registry of the Court $450.00 and $437.50 to the trust and the insurance company respectively.
The effect of this order and the final judgment taken together was to split the costs and attorney's fees between the parties.
Both parties to this appeal firmly rely on two cases, Aetna Life Insurance Company v. White, Fla.App. 1971, 242 So.2d 771, and O'Brien v. Elder, 250 F.2d 275 (5th Cir.1958). Of course, each party applies a different interpretation of the legal effect of the two cases to the particular factual setting in the case at bar.
A basic proposition of law set forth in both cases is that divorce alone will not automatically divest a former wife of her expectancy in the proceeds of her ex-husband's life insurance policy. See also, Mayberry v. Kathan, 98 U.S.App.D.C. 54, 232 F.2d 54 (1956). Where a property settlement agreement has been executed prior to a dissolution of marriage, purporting to resolve the property rights of the parties, the provisions therein are interpreted by the courts like any other contract. Underwood v. Underwood, Fla. 1953, 64 So.2d 281.
The fundamental consideration is the intention of the parties based upon a reasonable construction of the entire settlement agreement. O'Brien v. Elder, supra.
We have read the entire agreement entered into between the husband and wife in this case, and we have reviewed carefully the documents relied upon by the trial judge in entering a summary judgment in favor of the appellee. It is our conclusion that no reversible error was committed.
The most crucial portion of the agreement, as it concerns our construction of the intent of the parties with respect to the profit sharing trust and the insurance policy, *157 are paragraphs nine and ten, set forth in the margin.[1]
In our opinion, it cannot be reasonably inferred from the language contained therein, particularly paragraph nine, that the wife released an expectancy interest as the beneficiary under her ex-husband's profit sharing trust and insurance policy. The agreement reflects acceptance by the wife of the agreement as full satisfaction of her claim to only three specific matters: dower, alimony, and special equities to which she might be entitled.
Our conclusion is buttressed further by the affidavit and deposition of the appellant which appears in the record on appeal. The appellant stated that he talked with his father on several occasions subsequent to his divorce from the appellee and after he had suffered a serious heart attack.
The decedent indicated to the appellant that he knowingly had not changed the beneficiary of his life insurance policy because of his fear that his employer would look down upon the failure of his marriage to the appellee. However, the appellant contended that his father promised to change the beneficiary sometime in the future, and he assured the appellant that there was no need to make an immediate change because "he was going to live for a long time... ."
A mere intent to change the beneficiary of a life insurance policy is not legally sufficient, absent some affirmative action taken by the insured to effectuate the change. O'Brien v. Elder, supra. In addition, appellant's conversation with his father following the execution of the property settlement agreement illuminates the actual intent of the parties to the agreement.
By a cross-appeal, the appellee seeks reversal of the court order requiring her to pay costs and attorney's fees to counsel for the insurance company. In his reply brief, the appellant argues that the $450.00 cost judgment assessed against him by the court also was improper.
As a general rule, a disinterested stakeholder in an interpleader action not responsible for creating conflicting claims to a fund nor instituting the action for its own protection, and who seeks an expeditious judicial determination of the conflicting claims, is entitled to a reasonable attorney's fee for its role in the litigation. See, deGarcia v. Seiglie, Fla.App. 1970, 230 So.2d 37; Lucco v. Treadwell, Fla.App. 1961, 127 So.2d 461; Brown v. Marsh, 1929, 98 Fla. 253, 123 So. 762. Therefore, we reject the appellant's contention that the insurance company was not entitled to an attorney's fee, in the absence of a statute or contractual provision providing for the same.
We also reject appellant's argument that directly taxing costs to him for attorney's fees and costs due to the trust, when such costs should have been taxed to the fund awarded to the appellee, was improper. See Lucco v. Treadwell, supra.
Lastly, we decline to disturb the award of attorney's fees and costs to Connecticut General from the fund deposited in the Registry of the Court. While it is generally true that the prevailing party in an equitable action is awarded costs, the court in the exercise of sound discretion may apportion costs. See, 8 Fla.Jur. Costs § 8. Taxation of costs is a matter properly within the discretion of the trial judge. Spencer v. Florida-Georgia Tractor Company, *158 Fla.App. 1959, 114 So.2d 466. Furthermore, by statute it is provided that in a declaratory action, which the appellant instituted in this case, the court may award costs as are equitable. See Fla. Stat. § 86.081, F.S.A. (1973).
Therefore, for the reasons stated and upon the authorities cited and discussed, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] "9. The wife hereby accepts this Agreement in full satisfaction of all her right of Dower, or right of alimony or other special equities in the properties which she might otherwise have been entitled to receive.

"10. The Husband accepts this Agreement in full satisfaction of all rights he may have in the properties and equities of the Wife, which he might otherwise have been entitled to receive, including, but not limited to, all the Wife's rights, title and interest in and to that certain corporation known as `Goode, Davis Corporation', which owns and operates the business known as `Party Fashions and Gifts' located at 1837 N.E. 185 Street, North Miami Beach, Florida."